ISBELL *versus* MORRIS AND BELL & CO.

Where a party neglects in a suit at law, to take advantage of an entire failure of consideration then within his knowledge, he will not afterwards be permitted to appeal to equity for relief.

This case originated in a bill, filed in Franklin Circuit Court, to enjoin a judgment at law. The facts as alleged in the bill, showed that in March, 1824, the complainant, together with one Thompson, had executed to Morris a bond for two hundred dollars; which Morris immediately assigned to Bell & Co. The consideration of the bond, consisted in the agreement of Morris to conduct, for the complainants, a house of entertainment. Bell & Co as assignees of Morris, pursued the bond to a judgment, to enjoin which the bill was filed. The bill charged a general failure of the consideration—the carelessness, the waste and neglect of Morris in the business for which he was employed—his intoxication while so employed, and his insolvency; together with fraud in the assignment of the bond. The answer of Morris admitted the contract, but denied the failure of consideration, and the intoxication and waste—affirmed that he pursued his employment, till directed by complainant to desist, and insisted that there was no fraud in the assignment to Bell & Co—confessed his insolvency, but charged that it was known to complainant; and relied on the fact generally of the whole matter having been adjudicated at law.

The answer of Bell for himself and partners, merely contended for the fairness and good faith of the

assignment made to them by Morris, and relied on the decision at law as to the defence of the complainant.

On the final hearing of the cause, the bill was dismissed, and to reverse this decision, the following errors were assigned in this Court:

1st. That the Court erred in the final decree dismissing the bill.

2nd. That the Court erred in not perpetuating the injunction.

*Ormond* for plaintiff in error.—

It will be perceived that the consideration of this note, was, that Morris, should manage a house of entertainment. Suit was brought on the note, and the whole amount recovered. It is on the judgment thus obtained, that we pray relief. The articles of agreement were entered into at the same time that the note was executed. On an examination of the record, it will also be perceived, that the answers of the defendants, do not very strongly deny the allegations of the bill. It was in proof, that Morris was not competent for business—that he refused to attend to his employment, and was of great disadvantage to Isbell. Here the defence could not have been made at law. The failure of consideration was partial, and no defence subsisted, except in equity, or by cross action, and indeed a cross action here would avail nothing—Morris is insolvent. The case is clearly made out; the answer is evasive, and the depositions taken in the cause, prove the statements of the bill. The only question is, is there equity in the bill? Shall Morris recover two hundred dollars for five or six days service? It is a clear case of equity.

Why, I would insist, was the note assigned so soon by Morris? Is it not apparent that he never intended to comply with his contract? The contract was rescinded, and the assignee of Morris, stands in no better situation than himself.

*W. B. Martin, contra.—*

If it be true that Morris did nothing at all in reference to his undertaking, the failure of consideration was complete; therefore, there was a good defence at law. • The parties took his obligation knowing that he was insolvent—the agreement or obligation was the consideration, not the service itself. Who is to blame? The complainant let his paper go, and was satisfied with the obligation of Morris. We, the assignees, are innocent holders—we have paid money and are not to loose it. The complainant is in fault, and must the public suffer by that fault? Is it not a fraud upon the public? The complainant has no equity. The note was negotiable, and Isbell took the responsibility against Morris for damages, as the consideration. We have more equity than he. The proof, in support of the bill, is defective. The witness as to Morris' incompetency, is discredited, and other witnesses prove that the house was kept well. Now in order to sustain the bill against the answer, two witnesses are necessary, who can be believed: here they do not produce two good and creditable witnesses. Again, the case is strong in this, Morris was ordered off. He went away reluctantly; and it was the complainants fault. Isbell had a defence at law according to his own showing, when the failure was plead, and proved unavailing.

*Ormond*, in reply.

The rule of law is, that if the answer is absolute, then two witnesses are necessary: here, I contend, there are two witnesses.

If the covenants are independent, the case is stronger, for then there is no other remedy, than in equity. So far as the assignees are concerned, to pay them the money, would be to throw it away. They certainly have no equity. They held debts against an insolvent man, and are not in a worse situation, now, than before. The note was not made to defraud them, and their equity, cannot be superior to ours. The entire case presented no defence at law—the failure was only partial, and therefore only cognizable in equity.

SAFFOLD, J.—This writ of error was prosecuted for the revision of a decree of the Circuit Court of Franklin, dismissing the bill at the cost of the complainant Isbell; in which decree there is charged to be error.

The object designed and effected by the bill was to obtain an injunction against a judgment at law, rendered against Isbell on a bond for $200, executed by the complainant and Robert Thompson in favor of Morris, and by him assigned to S. Bell & Co, the plaintiffs at law. The ground of relief relied on, was a failure of the consideration of the bond.

The hearing was had on the bill, answers and proofs, from which we assume as the only facts material to be noticed—that in March, 1824, articles of agreement were entered into by Thompson and Isbell of the one part, and Morris of the other, stipulating a contract, that the latter with the assistance of his

family should live at, and keep a house of public entertainment for the former, until the end of that year, and give all necessary attention to travellers, and promote as much as in his power, the interest of the house. For these services he was to receive two hundred dollars, and for the payment of which, Isbell and Thompson gave him their note for the amount, at the same time of the execution of the articles, payable at the expiration of the term, during which the house was to have been kept. The bond, immediately after given was assigned by Morris to Bell & Co. The bill alleges a violation of the agreement on the part of Morris, by his continued intoxication, neglect of business, carelessness and great waste of the liquors, &c, furnished for the use of the house by himself and Thompson; and also by his voluntary abandonment of the house and employment, after about four days, and consequently a failure of the consideration of the contract. The bill also charges, that at the time of the execution and transfer of the bond, Morris was notoriously insolvent and has continued so; that within a few days after the transfer of the bond to Bell & Co, and before they had completed payment for the same, they had notice from complainant of the failure of consideration, and that the demand would not be paid; that the bond was transferred in consequence of the insolvency of Morris, and merely for the purpose of covering the debt and securing it against his creditors.

The separate answer of Morris admits the contract as charged, but contests the failure of consideration —denies the intoxication, neglect or waste imputed to him, and contends that he performed his part of of the contract, in taking charge of the house with the

assistance required, and that he properly performed the trust until Isbell became dissatisfied and directed him to cease; that he then did so with reluctance. He admits his insolvency; says it was known to Isbell when the contract was made. He denies the existence of any fraudulent intent in transferring the paper, averring it was done to satisfy debt justly due from him, and which he describes, to nearly the amount of the bond: and that it was agreed the small balance when collected should be returned to him. He also urges in bar of the relief sought, that all the matters complained of were relied on at law, where they were properly cognizable, and after full defence so made, the grounds were found insufficient.

Bell answers for himself and partners, that the transfer of the bond was in good faith, on the consideration and for the purposes avered by Morris, and that all except a small portion of said consideration was paid by them for the bond, prior to the alleged notice of the consideration having failed. He disclaims any particular knowledge of the failure and requires proof of the fact: he, also, in like manner with Morris insists on the benefit of the decision at law, in bar of relief sought in chancery.

The proofs on the part of Isbel, the complainant, consist of the testimony of A. Twetty and wife, the latter of whom, as respects Morris' situation and attention to the house during the few days he remained, goes far to sustain the allegations of the bill. Twetty himself no less sustains the allegations in these respects, and swears, moreover, that he was present when Morris declined the employ; that he did so voluntarily; and from a knowledge of his conduct while there thinks he was a disadvantage to his employers.

Benjamin Harris, the only witness on the part of the defendants, states nothing material; what he says of the credibility of Twetty is in terms so vague and irregular, as to avail nothing.

Under these circumstances was the complainant entitled to relief in chancery, or was the bill correctly dismissed? Morris' services, during the short time while the engagement continued, resulting as they did in a disappointment to the complainant and Thompson, and subjecting them to the trouble and necessity of removing his family and effects from the place, and making a different arrangement (as his answer admits to have been the fact) can not be supposed to have produced a balance of profit to the employers. If, therefore, Morris had materially violated the contract, or voluntarily abandoned it, he had no legal or equitable demand for compensation. If, on the contrary, he had complied with the agreement during the time, and was forced by the other parties to decline the situation, from the force of the contract, the services rendered, the inconvevience and disappointment produced, he was entitled to the full benefit of the contract, consequently to a recovery of the amount of the bond. The mutual stipulations of the parties, whether viewed as dependent or independent covenants, would be subject to the same rules. Nor is it material to decide whether the proofs sufficiently establish the fact, that Morris had so violated the agreement on his part as to authorise the employers to rescind it, as alleged in the bill, and denied in the answer. In either case it was a matter of proper legal cognizance. If complainant was warranted in rescinding the contract, he did what was requisite on his part in due time, by discontinuing the engagement,

and giving notice to the assignees that they might look to their safety. If at the time of giving the bond, it was agreed and understood by the parties in interest, that the same should be immediately transferred to Bell & Co, to answer other purposes, and that the same should be paid in any event, that, as well as the other features of the case, was a proper subject for the consideration of the jury. Would the complainant object that error or injustice was done him in the trial at law? The answer is that he should have sought redress at the trial by excepting to the opinion of the Court, or by motion for a new trial, as the case authorised. Every material fact in favor of the complainant, was alike susceptible of proof at law ; if he did not make the proofs, or having made them, did not claim or could not obtain the benefit thereof, it was his default or misfortune. The evidence does not show a partial failure of consideration—on the contrary the complainant contended for an entire failure, so that in any view of the case, the relief, if any was allowable alone at law. Could it be otherwise considered, the complainant was equally conversant with all the circumstances pending the trial at law, while urging his defence there ; and no reason or excuse is offered why he did not resort to chancery instead of litigating the claim at law. This circumstance interposes a further objection to relief in chancery. These rules have so often been recognized by this and other tribunals, that it is deemed unnecessary to refer to particular authorities.

Let the judgment be affirmed. .

PERRY, J. not sitting.